

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

March 30, 1998

The Honorable Hugo Berlanga
Chairman, Committee on Public Health
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-472

Re: Use of injectable substances by licensed chiropractors, and related questions (RQ-925)

Oliver R. Smith, Jr., D.C.
President
Texas Board of Chiropractic Examiners
333 Guadalupe, Tower III, Suite 825
Austin, Texas 78701

Dear Representative Berlanga and Dr. Smith:

Both of you ask whether the use of injectable substances by a licensed chiropractor in the treatment of biomechanical conditions of the spine and musculoskeletal system of the body is within the scope of practice of chiropractic as defined in V.T.C.S. article 4512b. By "injectable substances" we understand you to mean substances that are injected into a person with a needle. We conclude that the use of a needle to inject substances or for any purpose other than the drawing of blood for diagnostic purposes or the performance of acupuncture as defined by the Medical Practice Act, V.T.C.S. article 4495b, section 6.02(1), is not within the scope of practice of a licensed Texas chiropractor.[1] We also answer Dr. Smith's questions regarding the use of certain drugs in the practice of chiropractic.

A person may practice chiropractic in this state only if licensed to do so by the Texas Board of Chiropractic Examiners, and then only in compliance with the provisions of V.T.C.S. article 4512b. See V.T.C.S. art. 4512b, §§ 5a(a), 14a. A person is regarded as practicing chiropractic within the meaning of article 4512b if the person:

> (1) uses objective or subjective means to analyze, examine, or evaluate the biomechanical condition of the spine and musculoskeletal system of the human body;

---

[1] We assume for purposes of this opinion that a chiropractor is not otherwise licensed as a practitioner who is authorized to use needles in the scope of his or her practice.

(2) performs nonsurgical, nonincisive procedures, including but not limited to adjustment and manipulation, in order to improve the subluxation complex or the biomechanics of the musculoskeletal system; or

(3) holds himself out to the public as a chiropractor of the human body or uses the term "chiropractor," "chiropractic," "doctor of chiropractic," "D.C.," or any derivative of those terms in connection with his name.

*Id.* § 1.

Article 4512b expressly excludes certain acts from the practice of chiropractic. *Id.* § 13a. In 1995, the Seventy-fourth Legislature amended article 4512b to include "incisive or surgical procedures" among the excluded acts. *Id.* § 13a(a); *see* Act of May 29, 1995, 74th Leg., R.S., ch. 965, § 18, 1995 Tex. Gen. Laws 4789, 4803.[2] For purposes of article 4512b, the phrase "incisive or surgical procedure" includes but is not limited to "making an incision into any tissue, cavity, or organ by any person or implement," but does *not* include "the use of a needle for the purpose of drawing blood for diagnostic testing." V.T.C.S. art. 4512b, § 13a(a), (b). Your questions require us to determine whether use of a needle other than for the purpose of drawing blood is an incisive or surgical procedure.

We considered a closely related question in Attorney General Opinion DM-415. The issue there was whether the practice of acupuncture[3] is within the scope of practice of a licensed chiropractor who is not also a licensed acupuncturist. Attorney General Opinion DM-415 (1996). Central to our determination was a consideration of whether acupuncture, defined in part as "the insertion of an acupuncture needle" into the human body, is an "incisive or surgical procedure" under

---

[2]Prior to amendment, section 13a provided only that chiropractors may not use "surgery, drugs that require a prescription to be dispensed, x-ray therapy, or therapy that exposes the body to radioactive material." Act of May 29, 1995, 74th Leg., R.S., ch. 965, § 18, 1995 Tex. Gen. Laws 4789, 4803.

[3]When Attorney General Opinion DM-415 was issued, V.T.C.S. article 4495b, which governs the practice of acupuncture in Texas, defined acupuncture as:

(A) the insertion of an acupuncture needle and the application of moxibustion to specific areas of the human body as a primary mode of therapy to treat and mitigate a human condition; and

(B) the administration of thermal or electrical treatments or the recommendation of dietary guidelines, energy flow exercise, or dietary or herbal supplements in conjunction with the treatment described by Paragraph (A) of this subdivision.

V.T.C.S. art. 4495b, § 6.02.

article 4512b. *Id.* at 4. We reasoned that because the legislature expressly excluded from the range of procedures that are incisive or surgical "the use of a needle for the purpose of drawing blood for diagnostic testing," the legislature considered the use of a needle for the purpose of drawing blood to be an incisive or surgical procedure. *Id.* at 5. Seeing no distinction between the use of a needle for drawing blood and the use of acupuncture needles, we concluded that acupuncture was not within the scope of practice of chiropractic.[4] Likewise, seeing no distinction between the use of a needle for drawing blood and the use of a needle for injections, we conclude that the use of needles to inject substances into a person is excluded from the scope of practice of chiropractic.

We find support for our conclusion in the legislative history of V.T.C.S. article 4512b. The statute was amended in 1995 for the purpose of clarifying the "considerable confusion . . . about the scope of chiropractic." Debate on S.B. 718 on the Floor of the Senate, 74th Leg., R.S. (May 15, 1995) (statement of Senator Moncrief) (tape available from Senate Staff Services). The use of needles by chiropractors was a central issue in the debate. As first introduced, Senate Bill 718 would have excluded from the scope of chiropractic "invasive or surgical procedures," but did not define the term invasive. S.B. 718, 74th Leg., R.S. (1995) (introduced version). The Senate Committee on Health and Human Services amended the bill to exclude from the definition of invasive certain procedures, namely, the "examination of the ear, nose, and throat or drawing of blood for the purposes of diagnostic testing."[5] *Id.* (committee substitute). A witness testifying in support of the bill remarked that because acupuncture is an "invasive" procedure, the bill would prohibit acupuncture. Hearings on S.B. 718 Before the Senate Health and Human Serv. Comm., 74th Leg., R.S. (Apr. 12, 1995) (testimony of Dee Ann Newbald, Texas Acupuncture Association) (transcript available from Senate Staff Services).

The bill was amended on the senate floor to change "invasive" to "incisive" and to allow chiropractors to perform acupuncture and needle electromyogram ("EMG"),[6] but only if certified by

---

[4]This year, the Seventy-fifth Legislature amended the definition of acupuncture in V.T.C.S. article 4495b to define acupuncture, in part, as the "nonsurgical, nonincisive insertion of an acupuncture needle." Act of May 28, 1997, 75th Leg., R.S., ch. 1170, 1997 Tex. Sess. Law Serv. 4418, 4418 (to be codified as an amendment to V.T.C.S. art. 4495b, § 6.02(1) (effective Sept. 1, 1997)). Because acupuncture is now defined in the acupuncture statute as a "nonsurgical, nonincisive" procedure, it is not an "incisive or surgical procedure" excluded by the chiropractic statute from the scope of the practice of chiropractic. Therefore, our conclusion in DM-415 that needle acupuncture is not within the scope of the practice of chiropractic has been superseded by statute. *See* Attorney General Opinion DM-471 (1998). For all other uses of needles, however, the reasoning applied in DM-415 remains valid.

[5]It has been argued that the phrase excluding the use of needles for diagnostic testing was inserted not to make an exception to the prohibition on the use of needles, but to illustrate by example that the use of a needle is permitted. We do not find support for this assertion in the legislative history of Senate Bill 718. To the contrary, comments during debate on the bill illustrate that the members understood that the provision would exclude the use of needles for any purpose other than those expressly allowed. *See* discussion *infra* note 7.

[6]An electromyogram is "a record of the intrinsic electric activity in a skeletal muscle." MOSBY'S MEDICAL, NURSING, & ALLIED HEALTH DICTIONARY 534 (4th ed. 1994). The data is obtained "by applying surface electrodes or by inserting a needle electrode into the muscle and observing electrical activity with an oscilloscope and a loud
(continued...)

the Board of Chiropractic Examiners to perform such procedures. S.B. 718, 74th Leg., R.S. (1995) (as reprinted in S.J. of Tex., 74th Leg., R.S. 2059 (1995)). It has been argued that the term "invasive" was changed to "incisive" so as not to include acupuncture and other uses of needles within the definition of prohibited practices. However, even after the term "incisive" was substituted in, the senate continued to except from its definition the use of needles for diagnostic testing, acupuncture, and needle electromyogram. In our view, if the senate understood the term "incisive" not to include the use of needles, it would not have excepted from that definition the use of needles for certain purposes.

The provisions of Senate Bill 718 were added by Representative Uher as an amendment to Senate Bill 673 on the floor of the house, but without provisions expressly permitting acupuncture and needle EMG. Representative Janek offered an additional amendment to prohibit manipulation under anesthesia stating: "This amendment would take out any ability by the chiropractors to put needles in people." Debate on S.B. 673 on the Floor of the House, 74th Leg., R.S. (May 22, 1995) (statement of Rep. Janek) (transcript available from Senate Staff Services).[7] In our view, the legislature intended the use of needles for any purpose other than the drawing of blood for diagnostic purposes to be excluded from the scope of chiropractic.

We note that in Attorney General Opinion DM-443 (1997), this office considered whether the performance of needle EMG is within the scope of the practice of licensed physicians and physical therapists. The State Board of Medical Examiners has the statutory authority to determine what constitutes the practice of medicine, which is broadly defined. *See* V.T.C.S. art. 4495b, § 1.03(a)(12). The Texas Board of Physical Therapy Examiners is charged with the enforcement of the Physical Therapy Act. *See id.* art. 4512e, § 2G. Both boards, the medical board by resolution and the physical therapy board by rule, determined that needle EMG is within the scope of the practice of their respective professions. We concluded in DM-443 that the boards are entitled to deference in their interpretations of the acts they are charged with administering and enforcing, and their decisions that needle EMG is within the scope of their practices were reasonable ones.

In this case, the scope of chiropractic is not so broadly defined. Both the language of V.T.C.S. article 4512b and its legislative history indicate to us that the legislature intended to exclude the use of needles from the scope of the practice of chiropractic except for certain purposes. The Board of Chiropractic Examiners could not adopt a rule inconsistent with the statute.

---

[6](...continued)
speaker." *Id.*

[7]During the debate, Representative Steve Ogden remarked that the use of needles is not ordinarily viewed as part of chiropractic treatment, and that Representative Janek's amendment would ensure it remained true. He said: "It would seem to me like without your amendment, there would be a significant departure from the way chiropractic has represented itself in my district, which is an alternative to the more conventional treatment that would involve needles, drugs, anesthesia." Debate on S.B. 673 on the Floor of the Senate, 74th Leg., R.S. (May 22, 1995) (statement of Rep. Ogden) (transcript available from Senate Staff Services).

The chiropractic board's second question concerns the use by chiropractors of "dangerous drugs." V.T.C.S. article 4512b, section 13a(a)(2), excludes from the scope of the practice of chiropractic "the prescribing of controlled substances or dangerous drugs or any drug that requires a prescription."[8] The Health and Safety Code defines a "dangerous drug" as:

> a device or a drug that is unsafe for self-medication and that is not included in Schedules I through V or Penalty Groups I through 4 of Chapter 481 (Texas Controlled Substances Act). The term includes a device or a drug that bears or is required to bear the legend:
>
> (A)  Caution: federal law prohibits dispensing without prescription; or
>
> (B)  Caution: federal law restricts this drug to use by or on the order of a licensed veterinarian.

Health & Safety Code § 483.001(2); *see* Gov't Code § 311.011(b) (Code Construction Act) ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."). Thus Texas law considers a substance to be a "dangerous drug" when the federal Food and Drug Administration ("FDA") requires the substance to bear a prescription legend. The board tells us that in some instances, although the FDA requires a legend, some manufacturers do not include the legend in their packaging and promotion. We understand you to ask, therefore, whether a chiropractor may be found to be in violation of V.T.C.S. article 4512b if he or she prescribes a dangerous drug that does not carry the FDA-required legend.[9] We conclude that a chiropractor may be found to be in violation in such a case.

The statute defines a dangerous drug to include a drug that bears *or is required to bear* a prescription legend. Health & Safety Code § 483.001(2). Thus a drug that is required to bear a prescription legend is a dangerous drug even if it does not actually bear the legend. We believe it is the duty of a responsible health care provider to determine whether a drug not bearing a legend is nevertheless required to bear a legend. Furthermore, the critical factor in determining whether a drug is a dangerous drug is not whether it carries an FDA-required legend, but rather whether it is "unsafe for self-medication." A drug that is "unsafe for self-medication" falls within the definition

---

[8]A violation of article 4512b is punishable by the revocation or suspension of a chiropractor's license, or the probation or reprimand of a licensee. V.T.C.S. art. 4512b, § 14(a). The board may impose an administrative penalty in an amount not to exceed $1,000 for each day the violation occurs or continues, and the violator is also liable to the state for a civil penalty of $1,000 per day. *Id.* §§ 14a(a), 19a(a), (b). The Health and Safety Code also provides for criminal penalties for the possession or delivery of a dangerous drug. *See* Health and Safety Code ch. 483, subch. C.

[9]You ask about a chiropractor's "use" of dangerous drugs in his or her practice, while the statute speaks with respect to the "prescrib[ing]" of dangerous drugs. For purposes of this opinion, we assume that prescribing and using are synonymous.

of a dangerous drug even if it does not carry or is not required to carry a prescription legend.[10] Thus a chiropractor may be found to be in violation of article 4512b if he or she prescribes a drug that is "unsafe for self-medication" whether or not the drug carries an FDA-required legend.

The chiropractic board's third question also relates to the use of dangerous drugs. The board tells us that some manufacturers include legends on drugs even though the FDA does not require a legend on the particular drug. The board asks if such a drug falls within the definition of a dangerous drug. We believe that it does. Again, the Health and Safety Code includes within the definition of "dangerous drug" a drug *that bears or is required to bear* a prescription legend. Health & Safety Code § 483.001(2) (emphasis added). The definition is not limited to drugs that are required to bear the legend.

The chiropractic board's fourth question is: "In the State of Texas who is the source or body that has the definitive authority of defining a controlled substance, dangerous drug or drug that requires a prescription?" We find no single "definitive authority" on the question of classifying drugs. Certainly, the Texas Legislature has the power to define what constitutes a controlled, dangerous, or prescription drug, and it has done so. Health and Safety Code chapter 481 lists specific drugs that are deemed to be controlled substances. Health & Safety Code § 481.002(5). The Commissioner of Health may, with the approval of the Texas Board of Health, add to, delete from, or reschedule substances on the list. *Id.* § 481.038. Health and Safety Code chapter 483 defines a dangerous drug as a drug that is "unsafe for self-medication," including drugs that bear or are required by the FDA to bear a prescription legend. Thus, to some extent, the FDA determines what is a dangerous drug under Texas law.

Finally, the chiropractic board asks whether chiropractors may use injectable substances in the scope of their practice that are not controlled substances, dangerous drugs, or substances otherwise barred by the Chiropractic Act. Again, the use of a needle for any purpose other than the drawing of blood for diagnostic purposes or the practice of acupuncture is not within the scope of practice of a licensed Texas chiropractor. We conclude that the use of any injectable substance is not within the scope of the practice of chiropractic.

---

[10]The statute provides that dangerous drugs "include" prescription drugs. In accordance with the Code Construction Act, we construe "includes" as a term of enlargement and not of limitation or exclusive enumeration. *See* Gov't Code § 311.005(13).

## S U M M A R Y

The use of a needle to inject substances or for any purpose other than the drawing of blood for diagnostic testing or for the practice of acupuncture is not within the scope of practice of a licensed Texas chiropractor. A chiropractor may be found to be in violation of V.T.C.S. article 4512b, prohibiting the prescription by a chiropractor of dangerous drugs, if the chiropractor prescribes a drug that does not bear, but is required to bear, a legend stating that federal law prohibits dispensing the drug without a prescription. A drug that bears a prescription legend falls within the definition of "dangerous drug" found in Health and Safety Code section 483.001(2).

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Barbara Griffin
Assistant Attorney General